UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>SFA DESIGN GROUP, LLC,<br><br>Defendant. | No. 2:16-cv-1238-MCE-KJN<br><br>FINDINGS AND RECOMMENDATIONS |

INTRODUCTION

Presently pending before the court is plaintiff Travelers Indemnity Company of America's ("Travelers") motion for entry of default judgment against defendant SFA Design Group, LLC ("SFA Design"). (ECF No. 14.)[1] On January 3, 2018, after SFA Design failed to oppose Travelers's motion in accordance with Local Rule 230, the court vacated the hearing on the motion and gave SFA Design one final opportunity to oppose the motion by January 31, 2018. (ECF No. 17.) After SFA Design again failed to oppose Travelers's motion, Travelers's motion was taken under submission on the court's own motion pursuant to Local Rule 230(g). (Id.) For the reasons discussed below, the court RECOMMENDS that Travelers's motion be GRANTED IN FULL.

---

[1] This motion for default judgment proceeds before the undersigned pursuant to Local Rule 302(c)(19).

1

BACKGROUND

The background facts are taken, sometimes verbatim, from Travelers's operative original complaint, unless otherwise noted. (See Complaint, ECF No. 1 ["Compl."].)

This case arises out of a construction project for improvements to a two-story building in Colusa, California, referred to as the "Duck Lodge," which is owned by Barale Ranch, LLC ("Barale"). (Compl. ¶ 8.) In May 2013, Barale retained SFA Design to draw up plans for the installation of piers underlying the Duck Lodge, and to inspect the installation of such piers. (Compl. ¶ 9.) Around June 2013, Barale also retained SMP Construction and Maintenance, Inc. dba Foundation Repair of CA ("SMP") to install the piers at the Duck Lodge. (Compl. ¶ 10.) In turn, SFA Design hired an individual named Chris Fitch to inspect installation of the piers by SMP, which began around June 12, 2013. (Compl. ¶¶ 11-12.) Subsequently, in October 2013, Barale ordered SMP and SFA Design to terminate their operations at the Duck Lodge, and the pier installation project was never completed. (Compl. ¶¶ 13-14.)

Thereafter, on December 20, 2013, Barale filed suit against SMP and SFA Design in the Colusa County Superior Court, Case No. CV24009 ("Underlying State Action"). (Compl. ¶ 15; Declaration of Antony Vandermoore, ECF No. 14-3 ["Vandermoore Decl."] ¶ 2, Ex. 1.) In the operative second amended complaint in the Underlying State Action, Barale essentially alleged that SFA Design negligently designed the project; that SMP negligently performed the construction; and that SFA Design failed to provide an independent inspection for the project, because Chris Fitch, who was hired to inspect the installation of the piers, also performed installation work on the project. (See generally Vandermoore Decl. ¶ 2, Ex. 1.)

SFA Design initially tendered its defense of the Underlying State Action to Hanover Insurance Group ("Hanover") pursuant to a professional liability policy providing coverage for SFA Design's errors and omissions. (Compl. ¶¶ 17-18.) Hanover agreed to defend SFA Design and retained the law firm of Long & Levit, LLP to represent SFA Design in the Underlying State Action. (Compl. ¶¶ 19-20.)

SFA Design first tendered its defense to Travelers on September 23, 2015, almost two years after the Underlying State Action was originally filed, pursuant to general liability

insurance policies issued by Travelers to SFA Design. (Compl. ¶¶ 21-22, 27-28, Ex. A.) On January 21, 2016, subject to a reservation of rights, Travelers agreed to defend SFA Design in the Underlying State Action. (Compl. ¶¶ 23-24; Vandermoore Decl. Ex. 2.) Travelers first appointed Jerry Satran of Koeller, Nebeker, Carlson & Haluck LLP to defend SFA Design in the Underlying State Action and subsequently transferred the defense to James Bohm of Bohm Wildish, LLP. (Compl. ¶¶ 24-26; Vandermoore Decl. ¶¶ 3-4.) According to Travelers, it ultimately incurred a total cost of $159,876.20 in the defense of SFA Design in the Underlying State Action. (Vandermoore Decl. ¶ 5.)

On June 6, 2016, Travelers filed this federal action[2] against SFA Design asserting the following claims: (1) declaratory relief that Travelers had no obligation to defend SFA Design in the Underlying State Action; (2) declaratory relief that Travelers had no obligation to indemnify SFA Design against any judgment or settlement entered into in the Underlying State Action; and (3) equitable reimbursement of the defense fees and costs Travelers incurred in the defense of SFA Design in the Underlying State Action. (ECF No. 1.)[3] After SFA Design was properly served with process and failed to appear in the action, the Clerk of Court entered SFA Design's default upon Travelers's request. (ECF Nos. 4, 7-8.) The instant motion for default judgment followed on December 1, 2017. (ECF No. 14.)

LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.

---

[2] Travelers invoked the court's diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332.

[3] Travelers also asserted a fourth claim for declaratory relief regarding the right to independent counsel. That claim was an alternative cause of action and is not at issue in the present motion.

3

1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

As a general rule, once default is entered, well-pled factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pled allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim"). A party's default does not establish the amount of damages. Geddes, 559 F.2d at 560.

DISCUSSION

Appropriateness of the Entry of Default Judgment under the Eitel Factors

1. *Factor One: Possibility of Prejudice to Plaintiff*

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, Travelers would face prejudice if the court did not enter a default judgment, because Travelers would be without another recourse against SFA Design. As such, the first Eitel factor favors the entry of a default judgment.

2. *Factors Two and Three: The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint*

The court considers the merits of plaintiff's substantive claim and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim on which plaintiff may recover. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

Here, Travelers's first and second claims for declaratory relief (regarding the duty to defend and the duty to indemnify SFA Design) as well as the third claim for equitable reimbursement are all based on the same underlying allegation that there was no potential coverage under the terms of the Travelers policies.

An insurer has a duty to defend an action in its entirety where at least one of the claims is potentially covered under the terms of the insurance policy. Buss v. Superior Court, 16 Cal. 4th 35, 48-49 (1997). Nevertheless, an insurer may seek reimbursement for defense costs as to claims that are not even potentially covered under the insurance policy, so as to prevent unjust enrichment of the insured. Id. at 50-51. In this case, the policies issued by Travelers each contained an exclusion for bodily injury or property damage arising out of the rendering of or failure to render any professional services, which were explicitly defined to include preparation of design plans and conducting inspections. (Compl. ¶¶ 28, 32, Ex. A.) See, e.g. Food Pro Int'l, Inc. v. Farmers Ins. Exchange, 169 Cal. App. 4th 976, 991 (2008) (noting that pursuant to California law, a professional services exclusion applies to exclude those damages that occur in the performance of a professional service). Travelers thus contends that SFA Design's work performed on the Duck Lodge project falls squarely within the professional services exclusion in the Travelers general liability policies. According to Travelers, it initially accepted SFA Design's defense subject to a reservation of rights based on the potential that discovery could have revealed that Chris Fitch performed construction work at the project on behalf of SFA Design. However, discovery in the Underlying State Action subsequently confirmed that Chris Fitch did not, and was not authorized to, perform construction work on behalf of SFA Design, but was hired separately by SMP for that purpose. (See Declaration of Aaron Daniels, ECF No. 14-2 ["Daniels

Decl."] ¶ 9, Ex. 12, pp. 24:23-25:5, 25:12-19, 76:4-18, 79:11-80:24, 87:21-88:19.) Accordingly, SFA Design's work on the project was limited to preparing design plans and performing inspections, which plainly fall under the professional services exclusion. As such, the claims in the Underlying State Action were not even potentially covered under Travelers's policies issued to SFA Design.[4]

Therefore, Travelers's claims have merit and are sufficiently pled, and the second and third Eitel factors thus favor the entry of default judgment.

### 3. *Factor Four: The Sum of Money at Stake in the Action*

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). In this case, the amount of money sought ($159,876.20) is not an insignificant sum. However, California law clearly contemplates the potential reimbursement of defense costs to insurers under appropriate circumstances, which may well involve a significant sum of money. Therefore, the sum of money at stake does not in itself preclude the entry of a default judgment.

### 4. *Factor Five: The Possibility of a Dispute Concerning Material Facts*

The court may assume the truth of well-pled facts in the complaint (except as to damages) following the clerk's entry of default, and SFA Design has not appeared to dispute any such facts. Thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. Accordingly, the fifth Eitel factor favors the entry of default judgment.

////

---

[4] Travelers's briefing also discusses various other, alternative exclusions in the policies that arguably apply to the claims in the Underlying State Action. Nevertheless, because the claims plainly fall within the professional services exclusion for the reasons discussed, the court declines to reach Travelers's alternative arguments.

5.      *Factor Six: Whether the Default Was Due to Excusable Neglect*

In this case, there is no indication in the record that SFA Design's default was due to excusable neglect.  Indeed, despite having been provided with multiple opportunities to appear and defend its interests, SFA Design apparently declined to do so.  Accordingly, the sixth Eitel factor favors the entry of a default judgment.

6.      *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude entry of default judgment.

In sum, upon consideration of all the Eitel factors, the court concludes that Travelers is entitled to a default judgment against SFA Design.

Terms of the Judgment to Be Entered

After determining that a party is entitled to the entry of default judgment, the court must determine the terms of the judgment to be entered.  As noted above, Travelers requests that the court award it $159,876.20 as equitable reimbursement for its defense costs.

As discussed above, Travelers has adequately established that it had no duty to defend or indemnify SFA Design for the claims at issue in the Underlying State Action.  As part of its motion for default judgment, Travelers also sufficiently documented that it paid out a total of $159,876.20 to retained defense counsel in the Underlying State Action.  (See Vandermoore Decl. ¶¶ 5-8, Exs. 3 [financial detail summary of Travelers's payments], 4 [checks issued by Travelers], 5 [invoices from Koeller, Nebeker, Carlson & Haluck LLP], & 6 [invoices from Bohm Wildish, LLP].)  As such, the court finds that Travelers is entitled to equitable reimbursement in the amount of $159,876.20.

CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Travelers's motion for default judgment (ECF No. 14) be GRANTED IN FULL.
2. Judgment be entered in Travelers's favor and against SFA Design.
3. Travelers be awarded a sum of $159,876.20 as Travelers's damages pursuant to Travelers's claim for equitable reimbursement, together with interest at the legal rate from the date of entry of final judgment.
4. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

Dated: March 26, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE